# In the United States Court of Federal Claims

No. 14-870C

(Filed: March 18, 2015)

| | |
|---|---|
| **HYPERION, INC.,** <br><br> **Plaintiff,** <br><br> v. <br><br> **UNITED STATES,** <br><br> **Defendant.** | ) Post-award bid protest; subject matter <br> ) jurisdiction; conversion of a motion <br> ) to dismiss or for summary judgment <br> ) into a motion for judgment on the <br> ) administrative record; new transactional <br> ) facts obviating claim preclusion; the <br> ) "International Agreement" exception to <br> ) the Competition in Contracting Act; 10 <br> ) U.S.C. § 2304(c)(4); FAR § 6.302-4; <br> ) DFARS § 206.302-4; Defense Security <br> ) Cooperation Agency Manual |

Cyrus E. Phillips IV, Albo & Oblon L.L.P., Arlington, Virginia, for plaintiff.

Ryan M. Majerus, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Joyce R. Branda, Acting Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Kirk T. Manhardt, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Cameron Edlefsen, Trial Attorney, U.S. Army Legal Services Agency, Fort Belvoir, Virginia.

## OPINION AND ORDER

LETTOW, Judge.

This post-award bid protest reprises an earlier protest in which the protestor was successful. *Hyperion, Inc. v. United States*, 115 Fed. Cl. 541, 557 (2014) ("*Hyperion I*"). In the first action, the court awarded protestor, Hyperion, Inc., injunctive and declaratory relief and set aside a contract awarded by the United States Army ("the Army" or "the government") to Technical Communications Solutions Corporation ("Technical Communications") for installation and infrastructure upgrades to fiber optic cable networks in the Hashemite Kingdom of Jordan ("Kingdom of Jordan" or "Jordan"). *Id.* Hyperion is back before the court contesting the Army's renewed award of a contract to Technical Communications notwithstanding the court's prior decision. At this juncture, Hyperion seeks bid preparation and proposal costs incurred in connection with the procurement. *See* Compl.

Pending before the court is the government's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), or, in the

alternative, motion for summary judgment pursuant to RCFC 56. Mot. to Dismiss or, in the Alternative, Mot. For Summary Judgment ("Def.'s Mot."), ECF No. 18. The government contends that Hyperion's complaint is procedurally improper because plaintiff failed to seek bid preparation costs in its initial bid protest. Def.'s Mot. at 2. Additionally, the government avers that the Army complied with Department of Defense regulations in awarding the second contract because the Kingdom of Jordan acted to select Technical Communications as the sole-source awardee of a Foreign Military Sale under the Foreign Assistance Act, 22 U.S.C. § 2151-2431k, particularly 22 U.S.C. § 2344, and the Arms Export Control Act, 22 U.S.C. §§ 2751-2799aa-2, particularly 22 U.S.C. § 2762. *See* Def.'s Mot. at 14-23. Finally, the government claims that the amount of costs requested by Hyperion is improper and not supported by the required documentation. *Id.* at 3.

As the government avers, "the circumstances of this case are unique" and do not fit easily within an established template for analysis. Def.'s Mot. at 10.

## FACTS[1]

As initially structured, the Army's procurement was a small business set-aside subject to 48 C.F.R. ("FAR") § 15.101-2, requiring that the lowest-priced-technically-acceptable proposal would receive the award. *Hyperion I*, 115 Fed. Cl. at 546. After receiving four timely proposals, *i.e.*, from Hyperion, "Offeror A", "Offeror B", and Technical Communications, the Army ultimately awarded the contract to Technical Communications. *Id.* at 548-49. Hyperion subsequently filed a protest in this court, alleging that the other three offerors' proposals facially would be unable to comply with FAR § 52.219-14, "Limitations on Subcontracting." *Id.* at 549. Concluding that Hyperion sufficiently demonstrated prejudice in the procurement process based on the Army's unreasonableness in finding the other offers to be technically sufficient, the court set aside the Army's award to Technical Communications. *Id.* at 557. The judgment was entered on April 10, 2014 and became final on June 9, 2014, when no appeal was taken to the

---

[1]Although the government has considered that this case is susceptible to disposition on either a motion to dismiss under RCFC 12(b)(6) or a motion for summary judgment under RCFC 56, it nonetheless is a post-award bid protest subject to RCFC 52.1. Thus, review on the administrative record of the procurement is appropriate in this court. *See* RCFC 52.1 Rules Committee note (2006 adoption) ("Summary judgment standards are not pertinent to judicial review upon an administrative record. . . . This rule[, *i.e.*, RCFC 52.1,] applies whether the court's decision is derived in whole or in part from the agency action reflected in the administrative record.").

The court's findings are based on the administrative record. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005) ("[T]he [c]ourt . . . is required to make factual findings under [what is now RCFC 52.1] from the record evidence as if it were conducting a trial on the record."). Although that record was not certified by the agency under RCFC 52.1(a), it nonetheless has been put before the court by the parties in pertinent part.

Federal Circuit.[2]

After the Army notified the Kingdom of Jordan of the court's decision, Def.'s Mot at 23, Jordan submitted a Letter of Request directing a sole-source procurement to Technical Communications. A 47 (Letter from Brig. Gen. Ali Ahmad AL-Rawashdeh to Military Assistance Program, American Embassy, Amman, Jordan (June 1, 2014)).[3] The letter listed two reasons for the Kingdom of Jordan's decision: (1) Technical Communications has extensive experience working in the Middle East; and (2) it is a member of the on-ground engineering and installation team that had previously completed earlier portions of the five-part communications project. *Id.* On July 24, 2014, the government's Security Assistance Management Directorate approved a memorandum in lieu of justification and approval announcing that "[a]ny resultant contractual action will be awarded to T[echnical Communications]" and pricing would no longer be on a Firm-Fixed-Price Completion Basis. A 48-49 (Mem. for Record); Pl.'s Brief in Support of Resp. to Def.'s Mot. to Dismiss or, in the Alternative, Mot. for Summary Judgment ("Pl.'s Opp'n") at 13-14, ECF No. 22-1. On October 23, 2014, an official "Notice" was issued by the government stating that a sole-source award for the contract would be awarded to Technical Communications. Notice (Oct. 23, 2014), ECF No. 12; *see* Def.'s Mot. at 6-7; Pl.'s Opp'n at 14-15; Hr'g Tr. 27:5-10 (Jan. 26, 2015).[4]

On September 18, 2014, Hyperion filed suit in this court, seeking bid preparation and proposal costs and "unreimbursed legal fees" in the amount of $402,583.22, a "[d]eclaration that the contested [s]olicitation was a sham [c]ompetition," and "such further and other relief as the [c]ourt may deem just and proper." Compl. ¶¶ 1, 3, 7; Compl. at 15. Hyperion avers that the result of the Army's solicitation was "pre-ordained" because "the Army had decided before the [c]ompetition to make an [a]ward to T[echnical Communications]'s proposed [s]ubcontractor, doing so in the guise of an [a]ward to T[echnical Communications] as the prime [c]ontractor," evidenced by the fact that the Army knew but did not disclose subsurface conditions for the fiber-optic cable installation to bidders. Compl. ¶ 14. On November 24, 2014, the government filed its motion to dismiss or, in the alternative, motion for summary judgment.

After briefing and a hearing, the court concludes that it has jurisdiction to hear Hyperion's post-award protest of the second award to Technical Communications, but relief must be denied on the merits because the government acted properly under its foreign military

---

[2]After the first decision became final, on June 17, 2014, Hyperion filed an application for attorneys' fees and expenses and under the Equal Access to Justice Act, 28 U.S.C. § 2412. On September 29, 2014, the court awarded Hyperion attorneys' fees of $30,309.19, paralegal fees of $987.00, and expenses of $441.26. *Hyperion, Inc. v. United States*, 118 Fed. Cl. 540, 548 (2014) ("*Hyperion II*").

[3]The attachments to the government's motion are sequentially paginated and are denoted as "A __".

[4]Further citations to the transcript of the hearing held on January 26, 2015 will omit reference to the date.

assistance and sales regulations and policies to make an award of the contract based upon the Kingdom of Jordan's direction.

## ANALYSIS

Although the government invokes RCFC 12(b)(1) and RCFC 12(b)(6) as a basis for dismissal of Hyperion's protest, *see* Def.'s Mot. at 5-8, it does not shape its contentions around those rules. Instead, the government urges that Hyperion's claims should be dismissed because they are "procedurally improper" on two grounds: (1) the claims were previously adjudicated in the underlying bid protest and are therefore claim precluded, and (2) they are based on an erroneous assumption that the Army engaged in a "sham competition" in which "the Army had decided before the [c]ompetition to make an [a]ward to . . . T[echnical Communications]." *Id*. at 11-13.

### A. *Jurisdiction*

Hyperion premises this court's jurisdiction on the Tucker Act, 28 U.S.C. § 1491, as amended by the Administrative Dispute Resolution Act, Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874-76 (Oct. 19, 1996). By statute, this court has jurisdiction "to render judgment on an action by an interested party objecting to a solicitation by a [f]ederal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); *see Systems Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380-81 (Fed. Cir. 2012) (*"*On its face, [28 U.S.C. § 1491(b)(1)] grants jurisdiction over objections to a solicitation, objections to a proposed award, objections to an award, and objections related to a statutory or regulatory violation so long as these objections are in connection with a procurement or proposed procurement.").

Hyperion requests relief based on the government's actions in connection with a procurement, *i.e.*, the cancellation of the Army's solicitation and award of a sole-source contract following the court's judgment setting aside the government's initial award to Technical Communications. *See* Compl. "Congress has defined the term 'procurement' to include 'all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout.'" *OTI Am., Inc. v. United States*, 68 Fed. Cl. 108, 114 (2005) (quoting the statute that has been recodified as 41 U.S.C. § 111). As a general matter, the Court of Appeals for the Federal Circuit has held "that bid protest jurisdiction arises when an agency decides to take corrective action" in a procurement. *Systems Application & Techs.*, 691 F.3d at 1381 (citing *Turner Constr. Co. v. United States*, 645 F.3d 1377 (Fed. Cir. 2011)). The government has offered no reason discernible to the court why the Tucker Act should not apply under these circumstances. Indeed, the court on a number of occasions has exercised jurisdiction over corrective-action claims in post-award bid protests. *See, e.g.*, *WHR Grp., Inc. v. United States*, 115 Fed. Cl. 386 (2014) (exercising jurisdiction over a post-award bid protest contesting the Federal Bureau of Investigation's decision to cancel awards and replace them through a revised solicitation); *Sierra Nevada Corp. v. United States*, 107 Fed. Cl. 735, 749-50 (2012) (holding that the court has bid protest jurisdiction when an agency takes corrective action to cancel a contract award and solicit

new proposals); *Sheridan Corp. v. United States*, 95 Fed. Cl. 141, 148 (2010) (taking pre-award protest jurisdiction to address an initial awardee's objections to a procuring agency's decision to resolicit proposals). These decisions reflect the general principle that actions by an agency to cancel a solicitation and to initiate a new solicitation can adversely affect an awardee or offerors under the first solicitation. Correspondingly here, a prevailing party on a post-award protest can have its position undercut by a subsequent cancellation of the solicitation with an accompanying decision by the agency to proceed with a sole-source award divorced from any solicitation. In either instance, the protestor has suffered injury from the agency's action in the procurement. Consequently, the court has jurisdiction to consider Hyperion's claims.

### B. *Conversion of a Motion under RCFC 12(b)(6) and RCFC 56 to a Motion for Judgment on the Administrative Record under RCFC 52.1*

The government next contends that Hyperion has failed to state a claim upon which relief may be granted. A motion under RCFC 12(b)(6) is addressed on the pleadings. If the parties present matters beyond the pleadings, the court has discretion to take cognizance of those materials. *See Easter v. United States*, 575 F.3d 1332, 1335 (Fed. Cir. 2009) (citing *Gulf Coast Bank & Trust Co. v. Reder*, 355 F.3d 35, 38-39 (1st Cir. 2004); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1371, at 273 (3d ed. 2004)); *see also Forbes v. United States*, 84 Fed. Cl. 319, 321 (2008), *aff'd*, 333 Fed. Appx. 573 (Fed. Cir. 2009). When the court considers material beyond the pleadings, RCFC 12(d) requires the motion to dismiss to be treated as one for summary judgment under RCFC 56. *See* RCFC 12(d); *see also Huntington Promotional & Supply, LLC v. United States*, 114 Fed. Cl. 760, 767 (2014). Correlatively, if the materials consist of the record of administrative action by an agency, the motion must be considered in whole or in part under RCFC 52.1. *See* RCFC 52.1 Rules Committee note (2006) ("Cases filed in this court frequently turn only in part on action taken by an administrative agency. In such cases, the administrative record may provide a factual and procedural predicate for a portion of the court's decision . . . . This rule applies whether the court's decision is derived in whole or in part from the agency action reflected in the administrative record.").

In this instance, the government submitted to the court as attachments to its motion materials which give context to the allegations contained in the complaint and which were generated by the procuring agency during the procurement. *See* A 01-78.[5] The court has taken these materials into account in framing the factual background and addressing the merits of this case. At the hearing, the parties were put on notice that the court would consider the

---

[5]The attached materials include the Security Assistance Management Manual ("SAMM"), A 01-38; Letter of Offer and Acceptance, A 39-46; the Kingdom of Jordan's Letter of Request, A 47; Memorandum in Lieu of Justification and Approval, A 48-49; Department of Defense Federal Acquisition Regulation Supplement ("DFARS") excerpts, A 50-53; Army Contracting Command Desk Book excerpts from Aug. 1, 2014, A054-055; Federal Acquisition Regulation excerpts, A 56-59; Department of Defense Directive 5105.65 (Oct. 26, 2012), A 60-73; Reissuance of the Security Assistance Management Manual as Defense Security Cooperation Agency Manual 5105.38-M, DSCA Policy 12-20 (Apr. 30, 2012), A 74-76; and Joint Travel Regulations, 48 C.F.R. § 31.205-46, A 77-78.

administrative materials. *See, e.g.*, Hr'g Tr. 11:11-20, 26:2 to 27:17. In the circumstances, the court's consideration of these extra-pleading materials requires conversion of the government's motion to dismiss or for summary judgment into a motion for judgment on the administrative record. Accordingly, the government's motion to dismiss under RCFC 12(b)(6) or alternatively for summary judgment under RCFC 56 is converted into a motion for judgment on the administrative record under RCFC 52.1.

### C. *Claim Preclusion*

On the merits, the government first argues that judgment should be issued in its favor under the doctrine of claim preclusion. *See* Def.'s Mot. at 11-13. Under claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed. Cir. 2000) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)); *see also Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 476 (Fed. Cir. 1991) ("[The] aspect of *res judicata,* known in modern parlance as 'claim preclusion,' applies whether the judgment of the court is rendered after trial and imposed by the court or the judgment is entered upon the consent of the parties."). Claim preclusion may be established where (1) the identity of the parties or their privies is the same in both actions; (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first claim. *Jet, Inc.*, 223 F.3d at 1362; *see also Foster*, 947 F.2d at 476, 478-79.

The parties in this instance do not dispute factors (1) and (2); in both actions, the parties are identical and the court issued a final judgment on the merits with respect to Hyperion's first bid protest.[6] The disagreement concerns factor (3). In the government's view, Hyperion's current claims "arise from the exact same solicitation, competition, and contract award to T[echnical Communications]," and plaintiff's "current complaint is attempting to relitigate the same factual transactions at issue in the prior protest." Def.'s Mot at 12. To obtain "monetary relief following a [c]ourt decision awarding equitable relief on the same underlying facts," the government avers that Hyperion was required to "take the affirmative action" of filing a motion for relief from the prior judgment under RCFC 60(b). *Id.* at 7; Hr'g. Tr. 4:13-20.[7] Because

---

[6]In its sur-reply, Hyperion suggests that the court's judgment was not wholly "final." Pl.'s Sur-Reply to Def.'s Reply to Pl.'s Resp. to Def.'s Mot to Dismiss, or, in the Alternative, Mot. for Summary Judgment at 6-7, ECF No. 26-1. It nonetheless agrees that it *was* final in some respects; *i.e.*, regarding "[the] part of this [c]ivil [a]ction . . . setting aside the [c]ontract awarded to T[echnical Communications]," which involved the same solicitation and contract. *Id.*
 Additionally, and notably, the judgment had to be "final" for Hyperion to seek and obtain an award of fees and expenses under the Equal Access to Justice Act. *See Hyperion II*, 118 Fed. Cl. 540.

[7]RCFC 60(b) provides, in pertinent part:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

6

Hyperion requested injunctive relief in the earlier lawsuit, the government insists that it may not now request bid preparation and proposal costs in a separate action as the matter has already been adjudicated.  Def.'s Mot. at 7-8; Hr'g Tr. 5:13-15.[8]

Hyperion contests the government's characterization, arguing that the transactional facts are different in this action compared to the first bid protest.  Pl.'s Opp'n at 10-11, 15-17.  At the time the prior action was decided the government had not rescinded the solicitation and issued a sole-source award to Technical Communications.  Hyperion contends that it is challenging those agency decisions in this second action, not relitigating the factual elements that were at issue in the first protest.  Pl.'s Opp'n at 12.

Somewhat similar circumstances were addressed in *Insight Sys. Corp. v. United States*, 115 Fed. Cl. 734 (2014).  In that case, a contractor filed a motion against the government for bid preparation and proposal costs after having been awarded injunctive relief in a bid protest against the United States Agency for International Development ("USAID") because USAID subsequently canceled its solicitation and initiated a new procurement.  *Id*. at 736-37.  The court held that it had jurisdiction to entertain the motion although a final judgment had been entered under RCFC 58, reasoning as follows:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

RCFC 60(b).

[8]In the first action, Hyperion had requested declaratory relief, a permanent injunction requiring the Army to terminate its contract with Technical Communications, and "such further and other relief as the [c]ourt may deem just and proper."  Pl.'s Opp'n at 10-11 (quoting Compl. in No. 13-1012C, at 22).  The court in weighing the proper remedy reasoned that "T[echnical Communications] would suffer an economic hardship if the contract award is rescinded, but if Hyperion is only awarded bid preparation costs, it would suffer a corresponding hardship." *Hyperion I*, 115 Fed. Cl. at 557.  Ultimately the court set aside the contract awarded to Technical Communications, declining to provide "more specific instruction to the Army regarding its further actions in [the] procurement."  *Id*.

7

The continuing responsibility of this court over its decrees 'is a necessary concomitant of the prospective operation of equitable relief,' and has its roots in the power of courts to modify decrees 'as events may shape the need.' In the court's view, nothing about the Clerk's *pro forma* entry of a judgment under RCFC 58[] prevents this court from revisiting its decree in a bid protest case to address subsequent events. A contrary ruling might encourage an agency to play a procurement version of thimblerig—indicating that a new procurement was anticipated, only to proceed otherwise after the time for bid preparation and proposal costs has run.

*Insight Sys. Corp. v. United States*, 115 Fed. Cl. at 738 (internal citations omitted) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2961 (2014); and *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932); and citing *CNA Corp. v. United States*, 83 Fed. Cl. 1, 5-6 (2008), *aff'd*, 332 Fed. Appx. 638 (Fed. Cir. 2009); RCFC 60, 65).

In this instance also, subsequent events that occurred following the court's judgment have created new transactional facts requiring reevaluation. The government itself recognizes that a "changed circumstance" existed after the Kingdom of Jordan elected to designate a particular contractor following the resolution of the initial bid protest. Hr'g Tr. 6:12-15. In short, the transactional facts of this case differ from those present in the first bid protest, and the doctrine of res judicata does not bar Hyperion's claims.

### D. *The "International Agreement" Exception to the Competition in Contracting Act*

The court accordingly turns to the ultimate question in the case: whether Hyperion may recover bid preparation and proposal costs under the circumstances at hand. Generally, an unsuccessful competitor "may recover the costs of preparing its unsuccessful proposal if it can establish that the [g]overnment's consideration of the proposals submitted was arbitrary or capricious." *E.W. Bliss Co. v. United States*, 77 F.3d 445, 447 (1996) (quoting *Lincoln Servs., Ltd. v. United States*, 678 F.2d 157, 158 (1982)); *see also CNA Corp.*, 83 Fed. Cl. at 4-5; *PGBA, LLC v. United States*, 60 Fed. Cl. 196, 222 (2004), *aff'd*, 389 F.3d 1219 (Fed. Cir. 2004); *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 656 (2003). Three conditions must be satisfied for a plaintiff to recover: "(i) the agency has committed a prejudicial error in conducting the procurement; (ii) that error caused the protester to incur unnecessarily bid preparation and proposal costs; and (iii) the costs to be recovered are both reasonable and allocable, *i.e.*[,] incurred specifically for the contract in question." *Insight Sys.*, 115 Fed. Cl. at 738-39 (citing *Reema Consulting Servs., Inc. v. United States*, 107 Fed. Cl. 519, 532 (2012)); *see also Geo-Seis Helicopters, Inc. v. United States*, 77 Fed. Cl. 633, 646-50 (2007).

The parties dispute whether the first condition has been met, *i.e.*, whether the Army has committed a prejudicial error in conducting its procurement. *See* Hr'g Tr. 18:7-11. Hyperion avers that it is entitled to bid preparation and proposal costs because the "[c]ompetition

8

conducted under [the solicitation] was a sham," Pl.'s Opp'n at 17, and the costs were incurred while "chasing a [c]ontract which it was never going to receive," *id.* at 19.[9]

The government denies the existence of a "sham" and insists that any prejudicial error that occurred in connection with its initial solicitation was addressed by the court's prior decision and judgment. Def.'s Mot. at 3. Thereafter, the government argues that the Army did not commit any prejudicial error in cancelling the solicitation following the court's decision because the Kingdom of Jordan, rather than the Army, directed the contract award to Technical Communications. Def.'s Mot. at 14-26. The government emphasizes that because the contract involved services to be provided to a sovereign nation, the Army was bound by regulations that prevented it from overriding the decision of a sovereign nation receiving American funds. *Id.* at 21-22.

The Department of Defense's Foreign Military Sales program provides a framework through which the Department of Defense contracts with industry actors to provide American supplies and services to foreign nations. Def.'s Mot. at 14.[10] A Defense Security Cooperation Agency ("DSCA") Directive called the SAMM serves as the primary document through which the DSCA acts for the Department of Defense in carrying out its programs in compliance with the federal statutes and regulations. *Id.* at 15 (citing A 74-76 (Reissuance of the Security Assistance Management Manual as Defense Security Cooperation Agency Manual 5105.38-M, DSCA Policy 12-20 (Apr. 30, 2012))). The Manual, which is "mandatory for use by all the [Department of Defense] [c]omponents," outlines the procedure that a foreign government must follow to be approved for funding. A 02. This procedure begins with an initial assessment of the foreign government's needs and progresses to include formally sending a Letter of Request to the United States government, having the request reviewed by the appropriate United States Implementing Agency, and receiving a Letter of Offer and Acceptance from the Implementing Agency. A 08-22 (SAMM ¶¶ C2.1.1-C5.4.1). Once the Letter of Offer and Acceptance is signed and submitted to and approved by the Department of State, the Defense Finance and Accounting Office grants the Implementing Agency authority to begin allocating funds to execute the Federal Military Sales request. Def.'s Mot. at 17 (citing A 15-23 (SAMM ¶¶ C.5.1.6-C.5.4.7)). The Implementing Agency may supply the goods and services itself or negotiate a contract with the defense industry through designated U.S. procurement offices. *Id.*

---

[9] Hyperion suggests that the government's Independent Government Cost Estimate demonstrates that the government "knew the subsurface conditions which would be encountered" by the contractors, Pl.'s Opp'n at 18, yet did not provide that information in the form of "detailed site maps [or] location information for trenching, installation, and testing of long-haul and last-mile fiber-optic communications networks within [Jordan]" with the solicitation, insisting instead that each offeror bear the risk of such conditions, *id.* at 6. Hyperion contends that the government's failure to disclose subsurface conditions substantially increased Hyperion's bid preparation and proposal costs. Hr'g Tr. 24:7-16. Because Technical Communications and its proposed subcontractor had an "inside track" with Jordan, it was better able to bear that risk. Pl.'s Opp'n at 18.

[10] "'Security Assistance' is a group of programs that allows the transfer of U.S. military articles and services to friendly governments or international organizations." Def.'s Mot. at 16.

at 17-18 (citing A 12 (SAMM ¶ C4.4.1)).[11]  Changes may be made during the progression of a Foreign Military Sales case at the will of either the foreign government or the U.S. government. *Id.* at 18.

In general, when an Implementing Agency procures goods and services for the benefit of a foreign nation, the purchasers must act in accordance with Department of Defense regulations, including the prescribed competitive procurement process.  Def.'s Mot. at 18; *see* A 12; *see also* 10 U.S.C. § 2304(a) (requiring an agency to "obtain full and open competition through the use of competitive procedures").  Nonetheless, the Competition in Contracting Act provides exceptions in which foreign nations can direct sole-source awards outside of full and open competition.  *See* Def.'s Mot at 18.  One such exception is the "International Agreement" exception, 10 U.S.C. § 2304(c)(4), which applies when a foreign government reimburses the Implementing Agency for the cost of acquiring the goods or services or when projects are funded with nonrepayable Foreign Military Funds.  Def.'s Mot. at 18, 20; FAR § 6.302-4; A 27 (SAMM ¶ C.6.3.4.1) ("The exception may be applied to L[etters of Offer and Acceptance] funded with nonrepayable F[oreign Military Funds].").  Under this exception, full and open competition is not required when "the written directions of a foreign government reimbursing the agency for the cost of the procurement of the property or services for such government, have the effect of requiring the use of procedures other than competitive procedures."  10 U.S.C. § 2304(c)(4); *see also* FAR § 6.302-4; DFARS § 206.302-4.  Section 6.302-4 of the FAR, which "essentially mirrors the language from 10 U.S.C. § 2304(c)(4) concerning when 'other than competitive procedures' may be used," *L-3 Commc'ns Corp. v. United States*, 99 Fed. Cl. 283, 292 (2011),[12] additionally allows an agency to contract without full and open competition when a foreign government requests a particular contractor, *id.*; A 26 (SAMM ¶ C.6.3.4); A 53 (DFARS § 206.302-4(c)).[13]

---

[11]SAMM ¶ C.4.4.1 states, in relevant part "Defense articles or services may be sold from [Department of Defense] stocks, or the [Department of Defense] may enter into contracts to procure defense articles or services on behalf of eligible foreign countries or international organizations.  [Department of Defense] procurements for F[oreign ]M[ilitary ]S[ales] use standard Federal Acquisition Regulation (FAR) contract clauses and contract administration practices except where deviations . . . are authorized." A 12.

[12]*L-3 Communications* was decided before changes were adopted in 2012 to the procedures outlined in the SAMM.  *See* Hr'g Tr. 9:10-18; A 03-06 (Revised Guidance for Requests for Other than Full and Open Competition, DSCA Policy 12-15); A 74-76 (Reissuance of the SAMM, DSCA Policy 12-20 (April 30, 2012)).  Even so, the decision in *L-3 Communications* remains helpful in construing the relevant statutory, FAR, and DFARS provisions.

[13]The SAMM provides, in pertinent part:

One of [the Competition in Contracting Act]'s exceptions to full and open competition at 10 U.S.C. section 2304(c)(4) is implemented as the "International Agreement" exception in FAR 6.302-4 and [DFARS] 206.302-4.  An authorized official of the purchasing government may submit a written request . . . that the Implementing Agency with procurement responsibility . . . procure a defense

Furthermore, as of 2012, Foreign Military Sales customers are not required to provide any rationale for a sole-source request, Def.'s Mot. at 19 (citing Revised Guidance for Requests for Other than Full and Open Competition, DSCA Policy 12-15 [SAMM E-Change 200] (Aug. 9, 2012)); A 26 (SAMM ¶ C.6.3.4), and "may also request that a subcontract be placed with a particular firm," Def.'s Mot. at 22 (citing A 29 (SAMM ¶ C6.3.4.4))). Accordingly, under the "International Agreement" exception, the Implementing Agency may employ a noncompetitive procedure at the foreign nation's request, and may designate a specific firm as a contract awardee.

In this instance, the project to be completed on behalf of the Kingdom of Jordan was funded with nonrepayable Foreign Military Funds, Hr'g Tr. 9:20 to 10:19, 12:2-3, and therefore the "International Agreement" exception applies.[14] A sovereign nation, the Kingdom of Jordan has discretion and autonomy to direct sole-source awards without the full and open competition required under the federal government's procurement system. *See* Def.'s Mot. at 10; Hr'g Tr. 34:9-17. While the SAMM notes that "[r]equests for other than full and open competition . . . should be to meet the objective requirements of the purchaser and [cannot be conducted] for improper or unethical considerations," A029 (SAMM ¶ C6.3.4.3), in general, the Department of Defense contracting agencies "are encouraged to defer to a foreign purchaser's requests . . . to the extent that they are not aware of any indication that such requests violate U.S. law or ethical business practices." Def.'s Mot. at 21-22.

In cancelling the solicitation, the Army adhered to the provisions outlined in the SAMM. The Kingdom of Jordan's sole source request was proper under the "International Agreement" exception of the Competition in Contracting Act and it appears that all of the requisite steps were taken by both Jordan and the Army to ensure compliance. Notably, Hyperion has not contended that the Kingdom of Jordan's designation of Technical Communications as a sole-source awardee violated any of the SAMM requirements and has raised no other objection to the Kingdom of Jordan's actions. Although the court invalidated the contract between the Army and Technical Communications in the original bid protest, the invalidation was based on the Army's prejudicial error in assessing offers under the solicitation, and nothing in the materials presented suggests that Technical Communications would be incapable of completing the contract; indeed, Technical Communications previously completed the third iteration of the five-part project successfully. *See* A 47 (the Kingdom of Jordan's Letter of Request). Moreover, Hyperion has always been aware that the requested services were to benefit a sovereign nation. As the

---

> article(s) and/or service(s) from a specific organization or entity, or that competition be limited to specific organizations or entities. . . . F[oreign ]M[ilitary ]S[ales] customers need not provide a rationale for the request.

SAMM ¶ C.6.3.4.

[14]The government's counsel acknowledged that he did not know the exact source of the funds. Hr'g Tr. 11:21 to 12:1. Nonetheless, the parties appear to agree that the funds provided by the United States are essentially the Kingdom of Jordan's and within that nation's control. *See* Hr'g Tr. 12:8-10.

11

government correctly observes, "[i]n submitting a bid and participating in this procurement, Hyperion accepted the risk that Jordan could decide to conduct a sole-source procurement at any time during the solicitation phase and irrespective of any injunctive relief awarded to Hyperion in a bid protest." Def.'s Mot at 9-10; *see also* Hr'g Tr. 5:16-21. Generally, "[p]roposal preparation expenses are a cost of doing business that are normally 'lost' when the effort to obtain the contract does not bear fruit." *E.W. Bliss Co.*, 77 F.3d at 447 (quoting *Lincoln Servs., Ltd.*, *v. United States*, 678 F.2d 157, 158 (Ct. Cl. 1982)). The court's injunction in the prior decision and judgment restored Hyperion to the position it would have been in but for the agency's prejudicial errors in the solicitation, but there are no agency errors in the post-judgment proceedings regarding the procurement.

In sum, the Army's approval of the Kingdom of Jordan's selection of Technical Communications as the sole-source awardee of the contract did not constitute a prejudicial error and was not unlawful.

## CONCLUSION

The government's motion to dismiss under RCFC 12(b)(1) for lack of subject matter jurisdiction is DENIED. The government's motion to dismiss under RCFC 12(b)(6), or alternatively for summary judgment under RCFC 56, is converted into one for judgment on the administrative record under RCFC 52.1 and that motion is GRANTED. The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

          s/ Charles F. Lettow
          Charles F. Lettow
          Judge